**TEXAS MUT. LIFE INS. ASS'N v. BOYD.**

No. 1646.

Court of Civil Appeals of Texas. Waco.

Dec. 5, 1935.

Rehearing Denied Jan. 16, 1936.

Richey & Sheehy, of Waco, for appellant.

E. C. Street, of Waco, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellee, Mrs. Alberta Boyd, against appellant, Texas Mutual Life Insurance Association, a cor-

poration, to recover assessments paid on a benefit certificate issued to her, on the ground that appellant had repudiated a material part of said certificate and that such repudiation constituted a breach thereof authorizing her to sue for the return of all assessments paid by her. Appellant, as special defenses, alleged that appellee, with notice of such repudiation, had paid assessments on said certificate and that by doing so she had ratified and accepted the same as modified by appellant; that upon receipt of the letter from appellee's attorney stating that she had elected to treat such repudiation as a breach of the contract evidenced by said certificate and to sue for assessments paid, it had caused its secretary to write a letter to said attorney offering to ratify and comply with the original provisions of said certificate; that such letter was received by appellee's attorney in time for her to have paid a valid assessment levied against said certificate, the right to pay which expired the next day; that appellee did not pay the same, and that her certificate then and there lapsed by reason of such nonpayment and was no longer sufficient to support an action.

The case was tried to the court and judgment rendered in favor of appellee against appellant for $676.10.

### Opinion.

Appellant contends that the testimony is wholly insufficient to show an actionable breach of its contract. In that connection it further contends that since its breach was only anticipatory and partial, no action can be maintained until the time for its performance by the payment of the promised benefit has arrived. The certificate in this case was issued by appellant to appellee on October 31, 1927. By the terms thereof appellant, in consideration of the full payment of all assessments levied, promised to pay to the beneficiaries named therein, upon the death of the insured, the sum of $2,500, and in addition thereto, all death assessments paid by her during the life of such certificate. This certificate was apparently in the standard form used by appellant. Appellant, on August 1, 1932, repudiated that clause of its outstanding certificates by which it promised to pay the designated beneficiaries in each case all death assessments paid by the insured during the life of the certificate, and ceased returning such assessments. This action on appellant's part

was not communicated to all the holders of such certificates, but it at that time caused a circular letter to be prepared in which it recited a purported ruling of the board of insurance commissioners of this state requiring it to discontinue such payments. This letter was sent out only in reply to inquiries from individual certificate holders. Mrs. Connor, one of the beneficiaries in appellee's certificate, on August 5, 1933, wrote appellant a letter asking for information with reference to the present value thereof and called specific attention to the provision promising return of death assessments in addition to the $2,500 benefit as specified therein. Appellant, in reply to Mrs. Connor's letter, inclosed a copy of its circular letter of August 1, 1932, as aforesaid, and stated the same was self-explanatory. Appellee's attorney, on November 25, 1933, wrote a letter to appellant in which he referred to its declaration that it would not in the future return death assessments in addition to the sum stipulated in the certificate, asserted that the same was a breach of the contract, and advised that appellee had elected to rescind the same and asked that the money paid by her to it be at once refunded.

An unauthorized attempt on the part of a mutual benefit or insurance association to arbitrarily reduce its contractual liability to its certificate holders or to greatly increase the assessments required to keep its certificates in force, is, under the authorities in this state, a repudiation of its contract, and the certificate holder may elect to treat the same at an end and sue to recover assessments paid by him. Ericson v. Supreme Ruling, Fraternal Mystic Circle, 105 Tex. 170, 177, 146 S.W. 160; Winters Mutual Aid Ass'n v. Reddin (Tex.Com.App.) 49 S.W.(2d) 1095, 1099, pars. 12–14; Amarillo Mutual Benevolent Ass'n v. Franklin (Tex.Com.App.) 50 S.W.(2d) 264, 266, par. 5, and authorities there cited; Supreme Council American Legion of Honor v. Batte, 34 Tex.Civ. App. 456, 79 S.W. 629, 630 (writ refused); Merchants' Life Ins. Co. v. Lathrop (Tex. Civ.App.) 210 S.W. 593; Supreme Lodge K. P. v. Mims (Tex.Civ.App.) 167 S.W. 835, 839, par. 3, and authorities there cited; Home Benev. Soc. v. Keeter (Tex.Civ. App.) 82 S.W.(2d) 1084, 1087, par. 7, and authorities there cited; 6 Tex.Jur., p. 442, § 57; 6 Couch on Insurance, pp. 5044 et seq., § 1415. Appellant has neither pleaded nor proved any legal justification

of the repudiation of its contract to pay to the beneficiaries named in appellee's certificate all death assessments paid by her in addition to the specific amount stipulated in her certificate, and its contention is overruled.

Appellant contends that the action of appellee in paying certain assessments on her certificate after the receipt of its circular letter as aforesaid constituted an election to continue such certificate in force on the terms proposed by it and a waiver of any right on the part of appellee to complain of its action. Appellant's circular letter apprising Mrs. Connor that it had renounced its obligation to pay to beneficiaries all death assessments paid by the insured in addition to the particular sum stipulated in the certificate, was received by her on or about October 6, 1933. Appellee thereafter paid an assessment on her certificate on October 28, 1933, and another on November 9, 1933. Appellee, through her attorney, on November 25, 1933, notified appellant that she had elected to treat the contract at an end and demanded the return of all payments made by her. The payment of the last assessment was therefore made approximately thirty-three days after the first notice to appellee of appellant's renunciation. Whether a certificate holder has elected to consider the certificate still in force after notice of ground for rescission or termination is ordinarily one of fact for the court or jury trying the case. 6 Tex.Jur., p. 444, part § 58; Supreme Council A. L. of H. v. Batte, supra, 34 Tex.Civ.App. 456, 79 S.W. 629, par. 2; C. R. Garner & Co. v. Beaumont Cotton Oil Mill Co. (Tex.Civ.App.) 212 S.W. 690, 695, par. 2; Bishop v. T. Ryan Construction Co., 106 Wash. 254, 180 P. 126, 130, pars. 7–9. Certainly appellee was not required, on learning for the first time that appellant had more than a year before repudiated a material part of its contractual liability, to decide eo instante the course she would pursue in an attempt to best protect her rights. Some time was necessarily consumed in ascertaining pertinent facts and weighing the alternative before she could reasonably be expected or required to make a decision. Meanwhile assessments were being levied and payment thereof demanded on penalty of forfeiture of all her contractual rights. The contract up to that time was as to appellant wholly executory, while appellee had regularly and constantly performed her obligations by paying all assessments levied, which payments amounted at that time to an aggregate of approximately $560. All claim for any benefit on account of such payments would have been forfeited had she failed to make the two further payments demanded while she was considering the proper course to pursue in view of the situation created by the unauthorized act of appellant. The cases last above cited involved continued performance on the part of the innocent party for a while after the anticipatory breach, and findings of fact therein, express or implied, that the innocent party had not because thereof elected to treat the contract as still in force, were sustained. Supreme Council A. L. of H. v. Batte, supra, involved assessment insurance. In that case the certificate holder paid all assessments levied for a full year before she elected to treat her contract as rescinded or terminated and to demand the return of her payments. It is true that in that case there was evidence tending to show that the certificate holder entertained what seems to have been a vague and illusive hope that the unauthorized action by the order would be rescinded. The Supreme Court refused a writ of error in that case, as it did in the following companion cases arising out of the same situation: Supreme Council A. L. of H. v. Hefley (Tex.Civ.App.) 79 S.W. 1199; Supreme Council A. L. of H. v. Oxenford (Tex.Civ.App.) 79 S.W. 1199; Supreme Council A. L. of H. v. Cochran (Tex.Civ.App.) 81 S.W. 1276; Supreme Council A. L. of H. v. Cross (Tex.Civ. App.) 81 S.W. 1276; Supreme Council A. L. of H. v. B. W. Repsdorph (Tex. Civ. App.) 81 S.W. 1277; Supreme Council A. L. of H. v. E. Repsdorph (Tex.Civ.App.) 81 S.W. 1277; Supreme Council A. L. of H. v. Sweiss (Tex.Civ.App.) 81 S.W. 1277; Supreme Council A. L. of H. v. Whaley (Tex.Civ.App.) 81 S.W. 1277; Supreme Council A. L. of H. v. Whaley (Tex.Civ.App.) 81 S.W. 1278; Supreme Council A. L. of H. v. Williford (Tex. Civ.App.) 81 S.W. 1278. All these cases were disposed of by memorandum opinions, in which it was stated that the facts were substantially the same as in the Batte Case. In the Oxenford Case special mention was made of the fact that the certificate holder continued to pay his assessments as levied for a longer period of time than in the Batte Case, but there is no affirmative statement that each of these certificate holders entertained the illusive hope

that the unauthorized action would be rescinded. Appellant cites in support of its contention the case of Supreme Council A. L. H. v. Lippincott (C.C.A.) 134 F. 824, 825, 69 L.R.A. 803. The Supreme Council in that case, in August, 1900, passed a by-law reducing the amount of Lippincott's certificate and apparently also reducing the amount of each assessment to be thereafter paid. Lippincott refused to acquiesce and offered to pay assessments at the former rate. When such offer was refused he continued to pay assessments at the reduced rate, continually, however, insisting that he did not agree to the reduction of the amount promised in his certificate. He continued such payments until February 28, 1903, when he discontinued the same and demanded the return of the entire amount paid by him. The court held that he had elected to keep his contract · alive. Appellant also cites the case of Blakely v. Fidelity Mutual Life Ins. Co. (C.C.) 143 F. 619, affirmed (C.C. A.) 154 F. 43. There was, in that case, a dispute about the construction of the contract. The court held that there had been no repudiation of the policy by the company and that appellant did not treat its action as such, but stood on his construction that the certificate remained in force for a period of ten months before attempting to claim that it had been repudiated by the company. See in this connection, 6 Couch, p. 5045. We think these cases can be distinguished from the cases hereinbefore cited and from the case here under consideration. The trial in this case was before the court, and the judgment in favor of appellee implies a finding of fact contrary to appellant's contention, and the same is here overruled.

Appellant further contends that a certain letter written by its secretary to appellee immediately after it was formally notified that appellee had elected to treat the contract as rescinded was effective to defeat such election. Appellant, in its circular letter of August 1, 1932, as aforesaid, stated in substance that it had amended its by-laws so that no certificate issued after said date should promise the return of assessments and so that no certificate should be issued which did not provide that benefits should be equal in amount to all members of the same class. This letter was signed in the name of the corporation by its president. The letter which appellant contends nullified and defeated appellee's election was merely signed by the secretary in his own name as such. The substance of this letter was: "We wish to state that this will ratify the terms of the certificate of Mrs. Alberta Boyd, subject to the provisions contained in said certificate. Mrs. Boyd may place this ratification with her certificate showing this agreement." No statement of any action by the governing body of the corporation authorizing such offer was contained in the letter nor shown by the evidence. The promise made therein is apparently in conflict with the purpose and intent if not the letter of the new by-laws so announced, since the same constituted a new promise to return death assessments and also a promise of greater benefits to appellee than to others of her class. Appellant's action, as declared in its circular letter, had imposed upon appellee the necessity of ascertaining the facts and determining the course which she deemed best calculated to protect her rights. In that connection she secured the advice and assistance of counsel. She so stated in effect to appellant in declining to withdraw her election to rescind and accept appellant's new promise to repay to her beneficiaries the assessments in controversy. Since she had the right to make the election at the time she made the same, and had investigated and incurred expense, appellant's belated offer to make an exception in her case was ineffective to require her to retract her action. An election, whether to rescind or not to rescind, is final, absent, of course, mutual agreement avoiding the same. 6 Couch on Insurance, supra. Considering the situation shown by the evidence, we do not think that appellant's contention can be sustained, and therefore overrule the same.

The judgment of the trial court is affirmed.