Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:                               Opinion No. 0-3387
                                        Re: Insurance - Mutual assessment
                                            companies - Increase of rates -
                                            Reduction of benefits

          Your request for opinion has been received and care-
fully considered. We quote from your request as follows:

          "Section 17 of Senate Bill 135, passed by
     the Forty-sixth Legislature, reads as follows;

          "'Payments on Certificates Already in Force.
     If the payments of the members of any associa-
     tion coming within the scope of this Act, on
     certificates issued and in force when this Act
     takes effect, or the reinsurance or renewals
     of such certificates, shall prove insufficient
     to pay matured death and disability claims in
     the maximum amount stated in such policies or
     certificates, and to provide for the creation
     and maintenance of the funds required by its
     laws, such association may with the approval of
     the Board of Insurance Commissioners and after
     proper hearing before said Board provide for
     meeting such deficiency by additional, increas-
     ed or extra rates of payment, or by reduction
     in the maximum benefits stated in such policies
     or certificates then in force, or by both such
     increased payments and reduced maximum benefits,
     or the members may be given the option of agree-
     ing to reduced maximum benefits, or of making
     increased payments.'

          "After this law was in effect, several
     mutual assessment insurance companies subject
     to its provisions made application to the Board

to increase rates charged for their policies
or to decrease policy benefits under Section
17. Cases in point are the Underwriters Life
Insurance Company of Waco, which was author-
ized by the Board in its order, dated July 24,
1939, to increase rates; and the Provident
Insurance Company of Dallas, which was author-
ized by the Board in its order, dated November
29, 1939, to revised benefits in certain poli-
cies. Copies of the orders are attached.

"Will you please advise if, in your opin-
ion, the action taken by these companies in
increasing rates and revising policy benefits
under Section 17 of Senate Bill 135, following
the Board's orders, was legal?"

Opinion No. 0-3763 of this department held Sec-
tion 17 of Senate Bill 135, Acts of the 46th Legislature,
unconstitutional. Because of the importance of the ques-
tion, the matter was reconsidered by this department, and
upon reconsideration we again held said Section 17 un-
constitutional, in limited conference opinion No. 0-3763-A.
Copies of these opinions have already been furnished you.

As pointed out in opinion No. 0-3763-A, the
courts of Texas have recognized a clear distinction be-
tween the reduction of benefits and the increase of rates
with reference to mutual assessment insurance companies.
We quote from said opinion as follows:

"The raising of rates aside, we are bound
by the law in Texas that the reduction of bene-
fits in a mutual insurance contract constitutes
an impairment of the obligations of such con-
tract. In Supreme Council American Legion of
Honor v. Batte, 79 S. W. 629, it was said:

"'In our opinion, however, the enact-
ment of this by-law constituted a substan-
tial repudiation of the contract. The bene-
fit certificate upon its face provided for
the payment of the sum of $5,000 out of the
benefit fund of the order. The by-law was,
in effect, an announcement that the ap-
pellant would only pay $2,000 out of the

benefit fund, and would only pay the
remaining $3,000 provided that amount
could be paid out of the emergency fund
of the order * * *. The by-law itself
was, in our opinion, unauthorized, and
appellee might have treated it as void
* * *.'

"Wirtz v. Sovereign Camp, W. O. W., 268 S.W.
438, by a special Supreme Court, expressly recog-
nized and reaffirmed the doctrine of the Batte
case as follows:

"'It does not appear to us that
the Batte case, 34 Tex. Civ. App. 456,
79 S. W. 629, militates against what
has been said above. That case did not
directly involve the question of the
right to increase rates; but the asso-
ciation had issued a policy upon which
they had agreed to pay, upon the death
of the insured, $5,000, but it subse-
quently changed the contract so as to
make it liable for only $2,000, and the
Court of Civil Appeals held -- and we
think properly -- that there was a
repudiation of the contract. * * *

"'That the stipulation or promise in
a contract, such as is the basis of this
action, that the insured will comply
with and be bound by all future regula-
tions or by-laws of the association, does
not mean that the society may interfere
with the essential purpose of the con-
tract, viz., the payment of the indemnity
promised, or, in other words, cannot be
construed as authorizing the society to
repudiate a plain contract is clearly
settled there is no doubt. * * *'

"'The distinction between reducing by
means of a by-law or an amendment the
amount stipulated in the most unqualified
terms to be paid, and merely increasing

by a by-law dues or assessments to such extent as is necessary to meet the exigency ensuing out of the changed financial condition of the association brought about by decrease of membership by death or other causes, is obvious.

"'The first is a violation and repudiation of an unambiguous contract, while the other is not.'

"The doctrine of the Wirtz case was expressly recognized and reaffirmed in Supreme Lodge Ancient Order of Workmen v. Kemper, 155 S. W. (2d) 64, Rehearing denied October 8, 1941. Before quoting with approval the above quoted language in the Wirtz case, the Beaumont Court of Civil Appeals said:

"'The law will enforce the contratual right of a life insurance corporation to increase the amount of its monthly assessments against its members. Supreme Lodge K. of P. v. Mims, Tex. Civ. App., 167 S. W. 835. But the right to increase assessments does not authorize the corporation to diminish the amount payable under its certificate. . .'

"Therefore, Section 17 of Senate Bill 135 in its express authorization to mutual insurance associations to reduce benefits authorizes the impairment of obligations of contract, is violative of Section 16, Article 1, of the Texas Constitution, and cannot, under the pronouncements of the Supreme Court of Texas, be upheld as a valid and constitutional exercise of the police power of this State."

We quote from the Wirtz case, supra, as follows:

"That the stipulation or promise in a contract such as is the basis of this action, that the insured will comply with and be bound by all future regulations or by laws of the association, does not mean that the society

may interfere with the essential purpose of
the contract, viz., the payment of the in-
demnity promised, or, in other words, cannot
be construed as authorizing the society to
repudiate a plain contract is clearly set-
tled there is no doubt. Morton v. Supreme,
etc., 100 Mo. App. 76, 73 S. W. 264, 79
S. W. 629; Ericson v. Supreme, etc., 105 Tex.
170, 146 S. W. 160.

"Such holding, however, is equally sound
in law and in morals, but it is, however,
also settled law that benevolent societies
may increase their rates within reasonable
limits in order to enable them to meet their
obligations, and in doing so they violate no
contract."

The right of a benevolent or a mutual assessment
insurance association to increase its rates is, of course,
limited to the extent that such increase must be reasonable
and necessary. For example, in the case of Ericson v.
Supreme Ruling of Fraternal Mystic Circle, 146 S. W. 160
(Supreme Court of Texas), where the assessment of a member
was increased from $3.30 to $23.16 a month, without his
consent, the Supreme Court held under the facts of that
case that this was a repudiation of the contract and that
the member was entitled to a judgment against the society
for all assessments paid with interest.

In answer to your question, you are respectfully
advised that it is the opinion of this department that
since Section 17 of Senate Bill 135, 46th Legislature of
Texas, is unconstitutional, orders of the Board of Insur-
ance Commissioners based thereon are of no force and effect.
It is our further opinion that mutual assessment insurance
companies cannot legally reduce benefits promised its mem-
bers in its policies without the consent of such members
and policyholders. It is our further opinion that mutual
assessment insurance companies have the right to increase
their rates to the extent that they are reasonable and
necessary. The question of reasonableness and necessity,
of course, is a fact question to be determined by the facts
in each case.

This opinion is not to be construed as specifically passing on the legality of the acts of the insurance companies named in your letter, in raising rates or reducing benefits, as we have not been furnished with copies of their policy contracts, nor have we been furnished information as to whether such reductions of benefits were made with the consent of the policy holders of the company, and we have not been informed whether the increased rates are reasonable and necessary. In other words, the legality or illegality of the acts of the insurance companies in raising rates or reducing benefits will not be determined by Section 17 of Senate Bill 135, but will be determined by the policy contracts in each case and by all the facts in each case.

Trusting that this satisfactorily answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By              /signed/
Wm. J. Fanning
Assistant

WJF:GO

APPROVED DEC. 18, 1941
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
By: /s/ B. W. B., Chairman